UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BROSS ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13 CV 217 |
| | ) |
| TOWN OF CHESTERTON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on a motion for summary judgment filed by the defendants. who are the Town of Chesterton and two of its officials, Dave Novak and Emerson Delaney, in both their official and individual capacities (for convenience, collectively referred to as "Chesterton"). Briefly, and merely to describe the dispute for contextual purposes, not as a summary of disputed or undisputed facts, the plaintiff, Bross Enterprises, Inc. ("Bross"), is a corporation which operates a climate-controlled self-storage business in a building near downtown Chesterton. It alleges that Chesterton harassed it in a number of ways, such as selective enforcement of town ordinances and delaying issuance of building permits. Chesterton's possible motive is not entirely clear, but the complaint and Bross's argument suggests one reason is that defendant Emerson Delaney is a "close personal friend" (DE # 1 at 2, ¶ 6) of an adjacent business owner who wants to buy Bross's property, at a low price.

In its complaint Bross pleads six counts based on Chesteron's alleged harassment: 1) a Fifth Amendment violation for the taking of its property; 2) an Equal

Protection violation because of discriminatory enforcement of town ordinances; 3) tortious interference with business relationships; 4) intentional infliction of emotional distress;[1] 5) negligent supervision; and 6) negligent training. Chesterton has moved for summary judgment on all six claims/legal theories.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When considering the motion, the court must construe all of the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Chaib v. Geo Group, Inc.*, 819 F.3d 337, 340–41 (7th Cir. 2016). In a case involving cross-motions for summary judgment, that means that each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

Defendant's motion for summary judgment will be **DENIED** because genuine issues of material fact remain for trial as to Count II, alleging discriminatory enforcement of town ordinances. Briefly, Chesterton argues that Bross is pursuing a "class of one" equal protection claim which requires a plaintiff to show that: 1) a state

---

[1] The complaint uses the word "intimidation," and Chesterton argued that no such tort exists in Indiana. Plaintiff responded that it actually pleads intentional infliction of emotional distress, and Chesterton accepted that in its reply memorandum.

actor intentionally treated it differently than others similarly-situated; and 2) there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 652 (2000). Chesterton analogizes to *Reget v. City of LaCrosse*, 595 F.3d 691 (7th Cir. 2010), in which the plaintiff alleged that the city had selectively enforced its "junk-dealer" ordinance against his auto-body shop business. The court held that the plaintiff's claim failed because he had no evidence showing that a similarly-situated ordinance violator was not cited. Chesterton argues that Bross also has no evidence that Chesterton ignored some similarly-situated ordinance violator.

It is undisputed that Bross was cited on August 10, 2012, for violating Section 15-1 of Chesterton's ordinances, for creating a nuisance of standing water on an adjacent property, caused by run-off from Bross's parking lot. Ironically, the issue was caused by construction to improve drainage in the parking lot, a project undertaken because a business owner adjacent to Bross named Hopkins (who is the adjacent owner whom Bross alleges is a personal friend of defendant Delaney) had done work which (taking the facts in the light most favorable to non-movant Bross) caused water to flood Bross's property. Hopkins had raised the level of drains in his parking area (to which Bross had access via an easment) and because water wasn't draining as quickly as before, it backed up into Bross's parking area. (DE #22-1 at 16-17.)[2] Hopkins was not

---

[2] Citations herein to deposition pages reference the page number(s) assigned by the CM/ECF system, not the actual deposition page.

cited for creating a nuisance. Bross argues that Chesterton's treatment of Hopkins shows that a similarly-situated violator of the ordinance was treated more favorably.

In its reply Chesterton argues that Hopkins was treated differently because the town engineer, Mark O'Dell, concluded that Hopkins's raising of the parking lot drains did not cause the problem. The evidence cited for this "conclusion," however, is not compelling. It is one sentence in O'Dell's deposition. Asked what the "substance" was of his investigation of the flooding on Bross's property, he answered "it looked like a low spot in their [Bross's] parking lot." (DE # 21-4 at 3-4.) Compared to Bross's version of the facts, that his parking lot had never flooded before but did two days after Hopkins raised the drains (DE #22-1 at 20-21), there is a question of fact as to whether or not Hopkins caused Bross's standing-water problem. More to the point, there is an issue of fact whether O'Dell's purported conclusion was a rational reason not to cite Hopkins or the true reason, which points Chesterton has not addressed.

The court does find that Bross's other five claims do not present questions of fact that require submission to a jury. Because this case is going forward and may be resolved with or without a trial, the court gives a cursory explanation why it believes that Chesterton's motion for summary judgment on the other five claims is correct, removing those claims from further consideration in this action.

First, as to Bross's Fifth Amendment taking claim, an unconstitutional taking occurs when governmental regulations are applied in such an onerous and burdensome way that an owner is deprived of substantially all economically viable use of his/her

4

property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005). Whether such a diminution in value amounts to a regulatory taking requires consideration of the nature of the government action, the economic impact of the regulation, and the degree of interference with the owner's reasonable investment-based expectations. *Penn Central Transpt. Co. v. City of New York*, 438 U.S. 104 (1978); *Bettendorf v. St. Croix Cty.*, 631 F.3d 421, 430 (7th Cir. 2011).

Bross contends that there is a question fo fact as to whether there was a great economic impact on is business. It argues that Chesterton "required" it to install a "Hancor" drainage system at a cost of $50,000, but the evidence it cites shows only that Bross was told "our only option . . . to get it done fast was to go with a Hancor Underground Storage System," (DE # 22-11 at 37). Thus, it does not suggest that Chesterton *required* Bross to install that system. Other than that, Bross's evidence shows only that it suffered some construction delays and may have lost a few prospective customers. This is not enough of an economic impact to present a jury question on the taking claim.

As to Bross's claim for tortious interference with business relationships, an element of the tort is interference with an existing relationship. *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n.21 (Ind. 2001). Chesterton argues that Bross shows only that it may have lost some prospective, not existing, customers. Bross's response is: "Some jurisdictions . . . recognize claims for tortious interference with a prospective business relationship," and so it "requests that this Court entertain an action for tortious

5

interference of a prospective business relationship." (DE # 22 at 12-13.) In its reply Chesterton states that Indiana does not recognize the tort, and even if it did (but no authority is cited for the point), Bross would have to identify a specific prospective business relationship that was impacted, which it has not done.

Both parties seem unaware that Indiana recognizes the tort of interference with prospective advantage, which appears to be essentially the same. *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 289 n.2 (Ind. 2003); *Kiyose v. Trustees of Indiana Univ.*, 166 Ind. App. 34, 43, 333 N.E.2d 886, 891 (1975) ("The development of the tort of interference with prospective advantage has been parallel to that of interference with contractual relations."). However, even for this tort, the plaintiff must show "that a valid business relationship existed, of which the defendant knew" and intentionally interfered with causing plaintiff damage. *Flintridge Station Assoc. v. Am. Fletcher Mortgage Co.*, 761 F.2d 434, 440 (7th Cir. 1985).

The evidence Bross cites is that it knows it lost customers because it had to turn away "people that would just walk up to us and ask" to rent space. (DE # 22-1 at 24.) This is too speculative to be evidence of a "valid business relationship." There are numerous reasons why the inquiries made by those persons might not have developed into a business relationship, for example, they might have thought the rate charged by Bross was too high, or the term of the rental too long; they might have inspected the

storage space and found it unclean or odiferous. Because Bross's evidence is so speculative, there is no issue for a jury to decide.[3]

Count IV of Bross's complaint, pled as intimidation, is actually meant to be the tort of intentional infliction of emotional distress, Bross asserts in its reponse and Chesterton accepts in its reply. The parties focus their argument on whether the conduct Bross identifies is outrageous enough to establish the tort. In so doing they miss a larger problem: the only plaintiff in this action is a corporation, and a corporation cannot suffer mental anguish and so cannot recover in tort for intentional infliction of emotional distress. *See Felsher*, 755 N.E.2d at 594–95 (corporations cannot bring privacy claims because they have no feelings which can be injured); *see also F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) (corporation has no emotions and so cannot bring claim for intentional infliction of emotional distress); *Cohlmia v. Ardent Health Servs.*, LLC, 448 F. Supp. 2d 1253, 1272 (N.D. Okla. 2006) (same); *Wolf St. Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 32, 487 N.Y.S.2d 442, 448 (1985) (corporation cannot suffer humiliation or mental anguish); *Hogan Exploration v. Monroe Engineer Assoc.*, 430 So.2d 696, 704 (La. App. 2d Cir. 1983) (corporate plaintiff cannot experience mental anguish).

The court recognizes that because it has raised this issue *sua sponte*, Bross has had no opportunity to be heard. The court therefore grants leave to Bross to file a motion for

---

[3] Even the case Bross cites and asks this court to follow in recognizing tortious interference with a prospective business relationship, *Robles v. Consol. Graphics, Inc.*, 965 S.W.2d 552, 561 (Tex. App. 1997), states that the plaintiff must show a "reasonable probability" of entering into a business relationship. Perhaps if Bross were to show how many initial inquiries about renting space turn into actual rentals, that would be enough.

reconsideration, if it wishes to do so, and the court will not hesitate to revise this ruling should Bross show the court authority recognizing that corporations can bring a claim for intentional infliction of emotional distress.

In Count V Bross pleads that Chesterton is liable for negligent failure to supervise its employees, and in Count VI, for failing to properly train them. Chesterton argues that both claims are barred by statutory immunity.

As to the claims asserted against defendants Novak and Delaney in their personal capacities, that statute provides that plaintiff's complaint must allege that their acts and/or omissions were "clearly outside the scope" of their employment. Ind. Code § 34-13-4-5(c)(2).[4] Chesterton argues that the complaint only pleads that Novak and Delaney were acting within the scope of their employment, and so immunity applies. The court notes that Bross's complaint appears to plead Counts V and VI against The Town of Chestertin only, and plaintiff has not even responded to this argument. Therefore, summary judgment is granted on any individual-capacity claims that might exist against Novak and Delaney in Counts V and VI of the complaint.

As to Chesterton itself, it argues that it has immunity from liability for any "performance of a discretionary function," Ind. Code Ann. § 34-13-3-3(7), which applies to the supervision and training of its employees. *City of Hammond v. Cataldi*, 449 N.E.2d

---

[4] Although the statute is phrased in the disjunctive and seems to allow individual-capacity claims in other circumstances, for example if criminal or malicious conduct is pleaded, Indiana holds that if those acts are also incidental to the individual's employment, immunity applies. *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003).

8

1184, 1185 (Ind. Ct. App. 1983) (allegation that city negligently trained and supervised employees barred by statutory immunity for discretionary functions). Bross responds, appropriately, that the ministerial/discretionary approach to determining immunity in *Cataldi* has been abandoned and the inquiry now is a planning/operational test that calls for determining whether policy considerations were involved in the acts on which a plaintiff attempts to base liability.

The actions of the individual defendants here—deciding whether to issue building permits and whether to issue a nuisance citation—call for judgment based on policy considerations, as does any decisions made by individuals above them regarding their supervision and training. It is also clear that Bross has pointed to no evidence showing how Chesterton failed to supervise and/or train its employees. Chesterton is entitled to summary judgment.

For the reasons above, Chesterton's motion for summary judgment (DE # 20) is **GRANTED** in part and **DENIED** in part. Pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and Local Rule 72-1(b), the court hereby **ORDERS** that this case be referred to Magistrate Judge John Martin for purposes of holding a settlement conference within 60 days of the date of this order. The court will set a trial date under separate order.

**SO ORDERED.**

Date: September 29, 2016

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT